UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DEBLANC                                    CIVIL ACTION

VERSUS                                     NO: 13-6253

ST. TAMMANY PARISH                         SECTION: "J" (1)
SCHOOL BOARD

## ORDER & REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 13)** filed by Defendant St. Tammany Parish School Board (School Board), Plaintiff Cynthia DeBlanc's opposition thereto (Rec. Doc. 27), and the School Board's reply. (Rec. Doc. 32) Having considered the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation comprises Plaintiff's claims against her former employer, St. Tammany Parish School Board, for discrimination and retaliation under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111, et seq. (Rec. Doc. 1) Plaintiff alleges that she suffers from "chemo brain" as a result of the two-and-one-half years of extensive chemotherapy and radiation therapy she underwent after being diagnosed with breast cancer in 2002. (Rec.

Doc. 27, p. 1) Plaintiff explains that this condition causes her "to experience compromised short-term memory, difficulty [in thinking] in a linear way, difficulty [in understanding] directions and [reading] maps, and [difficulty in performing] sequential tasks such as filling out forms, and dealing with numbers." Id. at 2. Nonetheless, Plaintiff maintains that the condition "in no way impacts [her] ability to retain emotional data, character data and to perceive the overarching family, environmental and personal dynamics impacting the client, and the reasons involved in providing effective, expert diagnostics." Id.

In December of 2007, Plaintiff interviewed with Darryl Bruno, Mental Health Coordinator for St. Tammany Parish Schools, for a Mental Health Provider position in the St. Tammany Parish Schools. Id. at 1. At the interview, Plaintiff explained her past health problems and her ongoing struggle with "chemo brain." Id. at 1-2. Mr. Bruno hired Plaintiff forty-five minutes after her interview, but according to Plaintiff, he told her, "Do not tell anyone at the schools you have chemo brain." Id. at 2, 4. Plaintiff was a part-time contract employee, and the term of her final contract with the schools was August 22, 2008, to May

18, 2009.[1] (Rec. Doc. 13-1, p. 1; Rec. Doc. 13-4; Rec. Doc. 13-11)

Plaintiff began working as a Mental Health Provider in the St. Tammany Parish Schools in January of 2008. (Rec. Doc. 27, p. 3) Plaintiff did not receive any training or instructions regarding her administrative or clerical duties as a mental health provider; she "was told nothing about time sheets, maps to schools . . . , expectations about time with clients, office availability, [or] how to interact with people at the front desk when calling for a student." Id. "[I]n-house school counselor[s]" generally referred children to Plaintiff and typically obtained and retained the requisite parental consent forms. Id. When the counselor failed to obtain these forms, Plaintiff "was instructed to do so." Id. Although Plaintiff was not inhibited in her ability to provide treatment, Plaintiff alleges that these administrative tasks "were all the types of tasks with which [she] had difficulty . . . because of [her] chemo brain disability." Id.

On May 20, 2009,[2] Plaintiff and Mr. Bruno were attending the third day of a five-day work-related workshop

---

[1] Plaintiff's arrangement with Defendant at the time Defendant hired her is unclear to the Court. Defendant alleges that when it terminated Plaintiff, she was working under a one-year contract with Defendant. (Rec. Doc. 13-1, p. 1)

for mental health professionals. Id. at 5. During the workshop, Plaintiff remarked that diagnosing difficult patients with Borderline Personality Disorder is as stigmatizing to those patients as racial epithets are to African Americans. Specifically, Plaintiff alleges that she stated, "It's tantamount in its damage to calling an African American a 'nigger.'" Id. at 16. During the lunch break, Mr. Bruno approached Plaintiff and told her that she was fired. Id. at 5. When Plaintiff asked why, Mr. Bruno allegedly stated, "School," and offered no further explanation. Id. Plaintiff states that Mr. Bruno indicated to her that he would meet with her the following week to discuss his decision. Id. No such meeting took place. Id. at 5-7.

Plaintiff later phoned Mr. Bruno's secretary to inquire about obtaining the Continuing Education Units and pay that she earned by attending the mental health workshop.[3] Id. at 6. Mr. Bruno answered the call and informed Plaintiff that she would receive neither the

---

[2] At one point in Plaintiff's opposition, she states that this event took place on May 27, 2009. (Rec. Doc. 27, p. 5) Her Charge of Discrimination with the U.S. Equal Employment Opportunity Commission similarly states that the date of the discriminatory event was May 27, 2009. (Rec. Doc. 13-3) However, Plaintiff's complaint, Defendant's motion, and Plaintiff's response to Defendant's statement of uncontested facts all state that Defendant terminated Plaintiff on May 20, 2009. Thus, the Court will conduct its analysis assuming that this is the correct date.
[3] Plaintiff alleges that this telephone call took place "[a]bout a week" after the May 20, 2009, incident. (Rec. Doc. 27, p. 6)

credits nor pay for her attendance at the workshop. Id.
Defendant also refused Plaintiff's request for a meeting to
discuss her termination. Id.

On June 12, 2009, Mr. Bruno filed a complaint against
Plaintiff with the Louisiana State Board of Social Work
Examiners.[4] (Rec. Doc. 13-5, pp. 1-2) In it, Mr. Bruno
described a number of grievances. He stated that other
social workers had observed Plaintiff receiving shoulder
and back rubs from her student-patients and offering the
same to another social worker. Id. at 1. Mr. Bruno also
accused Plaintiff of continuing to counsel a student after
the student's parent refused counseling services. Id.
Finally, Mr. Bruno questioned Plaintiff's ability to
effectively counsel students. Mr. Bruno referenced
Plaintiff's habit of discussing personal matters on her
cell phone and eating with children present, constant
disorientation on campus, lack of organizational skills,
and cultural incompetency. Id. at 2. As an example of the
latter, Mr. Bruno described Plaintiff's May 20, 2009,
remarks from the mental health workshop, which he described

---

[4] Mr. Bruno's complaint is dated June 12, 2009. (Rec. Doc. 13-5) The
letter Plaintiff received from the Louisiana State Board of Social Work
Examiners notifying her of Mr. Bruno's complaint, however, indicated
that they received the complaint on June 19, 2009. (Rec. Doc. 27-1, p.
18) Plaintiff therefore seems to dispute the date that Mr. Bruno made
his complaint. (Rec. Doc. 27, p. 9) However, in her complaint,
Plaintiff states that Mr. Bruno faxed his complaint to the Louisiana
State Board of Social Work Examiners on June 12, 2009. (Rec. Doc. 1, p.
4)

as being the "last straw as her Supervisor." Id. Mr. Bruno
noted that while he was "sympathetic to [Plaintiff's]
condition, the number of complaints against her performance
as a Clinical Social Worker" left him with no alternative
but to file the official complaint. Id. The Board of Social
Work informed Plaintiff of the Complaint with a letter
dated June 24, 2009. (Rec. Doc. 27, p. 8) Following an
investigation, the Board of Social Work found that
Plaintiff had seen a few children without first obtaining a
parent's consent.[5] Id. at 7.

Plaintiff hired an attorney, Elvige Cassard, to
represent her in obtaining her continuing education credits
and salary. Id. at 6. On June 18, 2009, Mr. Cassard sent a
letter to Mr. Bruno informing him of the representation and
making certain demands. (Rec. Doc. 13-6, pp. 1-2) First,
Mr. Cassard asked Mr. Bruno to write to Plaintiff and
explain his decision to terminate her. Id. at 1.
Additionally, Mr. Cassard explained that Plaintiff was owed
"all amounts due in connection with her employment" under
Louisiana law. Id. at 1-2. Mr. Cassard noted that Plaintiff
was owed $324 in wages, $189 to cover the cost of the

---

[5] Specifically, Plaintiff chose to resolve the matter through a Consent
Agreement and Order in which she admitted "to instances of
inadvertently providing services to minor clients without the proper
parental or guardian authorization required to provide said services."
(Rec. Doc. 13-11, p. 2)

Continuing Education Units Plaintiff would have earned at the workshop had she not been terminated, $600 in penalties to date, and $200 in attorneys' fees to date. Id. at 2. Mr. Cassard demanded payment of the total amount of $1313 by June 25, 2009. Id.

On March 17, 2010, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission. (Rec. Doc. 13-3) Plaintiff indicated that her complaint of discrimination was based on "Disability." Id. Plaintiff wrote that she believed she had been terminated "because of [her] medical condition in violation of the [ADA]."[6] Id. She did not check the box for "Retaliation" in her Charge. Id. She did, however, check the box for "Retaliation" in the questionnaire she completed when submitting her Charge of Discrimination. (Rec. Doc. 27-1, p. 20)

On March 8, 2012, Plaintiff filed an "Amended Charge" with the EEOC. (Rec. Doc. 13-7, p. 1) In the amended charge, Plaintiff indicated that she based her Charge of Discrimination on "Retaliation" and "Disability." Id. She further amended her Charge by including additional

---

[6] Again, Plaintiff indicated on her Charge that the complained-of event took place on May 27, 2009. (Rec. Doc. 13-3) However, in multiple other places Plaintiff (and Defendant) allege that Defendant terminated Plaintiff on May 20, 2009. See, e.g., (Rec. Doc. 1; Rec. Doc. 27, pp. 9-10)

information about her medical condition, alleging that both her termination and Mr. Bruno's complaint with the Louisiana State Board of Social Work Examiners amounted to discrimination and retaliation under the ADA. Id. at 1-2.

On October 24, 2013, Plaintiff filed suit in the U.S. District Court for the Eastern District of Louisiana. (Rec. Doc. 1) Plaintiff alleges that Defendant discriminated and retaliated against her in violation of the ADA when Defendant terminated her on May 20, 2009, and filed a Complaint against her with the Louisiana State Board of Social Work Examiners on June 12, 2009. Id. Plaintiff asserts that she had "fully complied with all prerequisites and conditions precedent to jurisdiction in this Court under the ADA."[7] Id. at 1. Among other things, Plaintiff seeks back pay, front pay, benefits, medical expenses, compensatory damages arising from her "pain and suffering and mental anguish and distress," and attorneys' fees. Id. at 5-6.

Defendant filed the instant *Motion for Summary Judgment* **(Rec. Doc. 13)** on September 26, 2014. Plaintiff

---

[7] Accordingly, the Court assumes that Plaintiff filed her lawsuit within ninety days of receiving any "right-to-sue" letter from the EEOC. Dao v. Auchan Hypermarket, 96 F.3d 787, 789 (5th Cir. 1996).

opposed the motion on March 3, 2015.[8] (Rec. Doc. 27)
Defendant replied on March 10, 2015. (Rec. Doc. 32)

**PARTIES' ARGUMENTS**

Defendant argues that it is entitled to judgment as a
matter of law as to Plaintiff's claims for discrimination
and retaliation under the ADA because they are both
untimely and without merit. (Rec. Doc. 13-12) First, an ADA
Plaintiff must file a charge of discrimination with the
EEOC within 180 days of the alleged discriminatory
employment action. In Louisiana, if such plaintiff files a
complaint with the state or local authority capable of
granting relief, then the ADA provides that the plaintiff
has 300 days from the alleged discriminatory action to file

---

[8] Defendant initially set its *Motion for Summary Judgment* for submission
on October 22, 2014. (Rec. Doc. 13-13) On October 10, 2014, the Court
continued the submission date for Defendant's motion after the Court
granted Plaintiff's *Motion to Continue Trial* (Rec. Doc. 14) and
Plaintiff's counsel's *Motion to Withdraw*. (Rec. Doc. 15) Per Court
order, Plaintiff was required to inform the Court whether she would
proceed pro se or retain alternative counsel within thirty days of the
order granting the motion to withdraw. (Rec. Doc. 18) Plaintiff failed
to so inform the Court. Thereafter, Defendant filed a motion to reset
its *Motion for Summary Judgment* for submission on December 17, 2014,
which the Court granted. (Rec. Docs. 19, 20) Plaintiff sought a
continuance of the submission date for Defendant's *Motion for Summary
Judgment*, stating that she was not an attorney and would require
several months to prepare any opposition. (Rec. Doc. 22) Although
Defendant opposed the motion, the Court granted Plaintiff a continuance
and reset the motion for submission on March 11, 2015, in accordance
with Plaintiff's request. (Rec. Docs. 23, 24) At that time, the Court
contacted Plaintiff and provided her with information to assist her in
locating an attorney or, alternatively, in preparing her opposition.
The Court also informed Plaintiff that it would not grant another
continuance on Defendant's *Motion for Summary Judgment*. Nevertheless,
on February 26, 2015, Plaintiff filed a *Motion to Continue Defendant's
Motion for Summary Judgment*. (Rec. Doc. 25) The Court denied the motion
on February 27, 2015, maintaining the March 11, 2015, submission date.
(Rec. Doc. 26)

her charge of discrimination. Thus, Plaintiff had a maximum of 300 days from the date of the alleged discriminatory employment action to file her charge of discrimination. The alleged discriminatory action here—Defendant's termination of Plaintiff—occurred on May 20, 2009, when Plaintiff's supervisor informed her that she was terminated. Plaintiff filed her charge of discrimination with the EEOC on March 17, 2010. Thus, Defendant argues that Plaintiff filed her charge of discrimination 301 days after the alleged discriminatory employment action. Defendant argues that Plaintiff's amended charge of discrimination adding her claim for retaliation, filed on March 8, 2012, is similarly untimely. Defendant further asserts that there is "no basis to suggest that any claim for retaliation should relate back" to Plaintiff's previous charge of discrimination asserting only a discrimination charge. Plaintiff's charges of discrimination asserting the discrimination and retaliation claims are therefore untimely. Defendant argues that, as a result, this Court lacks jurisdiction to consider her claims.

Next, Defendant argues that Plaintiff's ADA claims are without merit. First, Defendant asserts that Plaintiff cannot make a prima facie case of disability under the ADA. Defendant argues that Plaintiff is not a "qualified

10

individual with a disability" under the ADA. Defendant maintains that it declined to renew Plaintiff's contract as a result of her poor performance and the inflammatory remarks she made on May 20, 2009, not as a result of her alleged disability. Defendant also notes that Plaintiff cannot prove that "she was treated differently than any other employee based on her disability." Id. at 6. Defendant stresses that none of its other employees publically made racially insensitive remarks and admitted to violating the Louisiana Social Work Practice Act. Id. at 6-7. Next, Defendant asserts that Plaintiff cannot prove retaliation under the ADA. Mr. Bruno terminated Plaintiff and filed his Complaint with the Louisiana State Board of Social Work Examiners as a result of Plaintiff's unsatisfactory performance, as evidenced by the complaints against Plaintiff from other employees of the St. Tammany Parish Schools. Further, Defendant argues that the June 18, 2009, letter from Plaintiff's attorney shows that Plaintiff was not, at that time, alleging any violations of the ADA.

Plaintiff counter argues that her claim is not time-barred and that she can prove a prima facie case under the ADA. (Rec. Doc. 27) First, Plaintiff asserts that her claim is not time-barred because she filed her EEOC Charge of Discrimination within 300 days of when she learned that

Defendant had discriminated against her based on her disability in violation of the ADA. Plaintiff did not learn the reason for her termination on May 20, 2009; Defendant's only explanation was, "School." The letter Plaintiff's attorney sent to Mr. Bruno confirms that Plaintiff was unaware of the reason for her termination. Plaintiff did not learn that she was terminated as a result of her disability until she received a letter dated June 24, 2009, from the Louisiana State Board of Social Work Examiners, which included a copy of Mr. Bruno's complaint. Plaintiff submitted her discrimination Charge on March 17, 2010, which is within the 300-day limit as computed from the date she learned of Defendant's discrimination. Additionally, Plaintiff included her retaliation claim in the intake questionnaire corresponding to her March 17, 2010, Charge. She therefore argues that she timely filed her retaliation EEOC Charge even though she did not indicate on her original Charge that she was alleging retaliation as a basis for her Charge. And although Plaintiff's original Charge did not mention Mr. Bruno's complaint, Plaintiff argues that she included her claim of discrimination based on the complaint in her original Charge because she mentioned it in the intake questionnaire. Second, Plaintiff contends that she can make a prima facie case under the ADA

for her discrimination and retaliation claims. She asserts that "chemo brain" is a disability under the ADA, as decided by the U.S. Court of Appeals for the Third Circuit. She is therefore a "qualified individual with a disability" as required under the ADA. She further argues that Mr. Bruno's complaint to the Louisiana State Board of Social Work Examiners is an admission on his part that he fired her as a result of her disability. In conclusion, Plaintiff invokes Federal Rule of Civil Procedure 56(d), arguing that she should be permitted to conduct discovery before the Court rules on Defendant's motion.

In its reply, Defendant again argues that Plaintiff's claims are untimely and without merit. (Rec. Doc. 32) First, Defendant stresses that the 300-day window for filing a charge with the EEOC runs from the date of the discriminatory action rather than the date on which Plaintiff became aware of Defendant's alleged discriminatory animus. And to the extent Plaintiff attempts to invoke the doctrine of equitable tolling, Defendant argues that Plaintiff has not met the requirements for its application. Namely, there is no evidence to suggest that Defendant misled Plaintiff or that she was otherwise "prevented in some extraordinary way from asserting [her] rights." Id. at 2 (citing Ramirez v. City of San Antonio,

13

312 F.3d 178, 183 (5th Cir. 2002)). Second, Defendant argues that it declined to renew Plaintiff's contract for a valid, nondiscriminatory reason: Plaintiff admitted to violating her duties as a Social Worker and there were a number of complaints made against her during her time with the St. Tammany Parish Schools. Third, even if Plaintiff's retaliation claim under the ADA is timely, it is without merit. Plaintiff has argued that she was unaware that she had any ADA claim until she received a letter dated June 24, 2009. This is the thrust of Plaintiff's argument as to how her EEOC Charge was timely filed. Plaintiff did not engage in any protected act under the ADA prior to her receipt of the letter, and Defendant took no further action after Plaintiff received the letter. Defendant therefore could not have retaliated against Plaintiff for any protected act under the ADA. Defendant concludes that Plaintiff's claims for discrimination and retaliation under the ADA are untimely and without merit and should be dismissed.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment

14

as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder

15

to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075.

## DISCUSSION

### A.   Whether Plaintiff's ADA Claims Are Time-Barred

Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Taylor v. Books A Million, Inc., 296 F.3d 376, 378–79 (5th Cir. 2002). The exhaustion requirement is met when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. Id. In a

deferral state such as Louisiana,[9] a plaintiff must file a charge of discrimination with the EEOC within 300 days from the date of the alleged act of discrimination to preserve his right to sue in federal court. See 42 U.S.C. § 2000e-5(e)(1) (providing that Title VII plaintiff must file charge within 300 days after the alleged unlawful employment practice in deferral states); 42 U.S.C. § 12117(a) (incorporating Title VII remedies and procedures for ADA claims). This 300-day window commences to run "upon the occurrence of the discriminatory *act* that supports a claim." Sosa v. Guardian Indus. Prods., No. H-06-1614, 2007 WL 1300463, at *2 (S.D. Tex. May 3, 2007)(citing Chapman v. Homco, Inc., 886 F.2d 756, 758 (5th Cir. 1989); Merrill v. S. Methodist Univ., 806 F.2d 600, 604-05 (5th Cir. 1986)). "[F]or limitations purposes, the timing of Plaintiff's awareness of a discriminatory animus is irrelevant." Id.

"Although the statutory time limitation is mandatory, the limit is not 'a jurisdictional prerequisite to suit in federal court,' but is subject to equitable doctrines such as waiver, tolling or estoppel." Mackey v. Cont'l Airlines, No. CIV.A. H-11-4246, 2012 WL 1202045, at *3-4 (S.D. Tex.

---

[9] A deferral state is one in which state law prohibits discrimination in employment and a state agency has been established to grant or seek relief for such discriminatory practice. Clark v. Resistoflex Co., 854 F.2d 762, 765 n. 1 (5th Cir. 1988). The Louisiana Commission on Human Rights was initially funded and began operating in April 1994, making Louisiana a deferral state since that time. LA. REV. STAT. ANN. § 51:2233.

Apr. 10, 2012)(citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002); Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)). A court should apply the doctrine of equitable tolling "sparingly," however. Morgan, 536 U.S. at 113. The U.S. Fifth Circuit Court of Appeals has recognized the following justifications for tolling the limitations period: "(1) the pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) the EEOC's misleading the plaintiff about the nature of her rights." Granger v. Aaron's, Inc., 636 F.3d 708, 712 (5th Cir. 2011). Additionally, the Fifth Circuit has allowed equitable tolling "where a plaintiff . . . actively pursued judicial remedies but filed a defective pleading, as long as the plaintiff . . . exercised due diligence.'" Id. "The party who invokes equitable tolling bears the burden of demonstrating that it applies in his case." Ramirez v. City of San Antonio, 312 F.3d 178, 183 (5th Cir. 2002).

Here, Plaintiff filed the requisite Charge of Discrimination on March 17, 2010. In the Charge, Plaintiff indicated that Defendant discriminated against her based on her disability. She alleged facts to suggest that Defendant terminated her as a result of her "medical condition in

violation of the [ADA]." (Rec. Doc. 13-3) Plaintiff also submitted an intake questionnaire in which she alleged that Defendant retaliated against her when Mr. Bruno filed a complaint with the Louisiana State Board of Social Work Examiners. (Rec. Doc. 27-1, p. 20) The Court therefore will address the timeliness of Plaintiff's claims for discrimination and retaliation.

First, the Court finds that Plaintiff's claim of discrimination under the ADA based on her termination is time-barred. Defendant terminated Plaintiff on May 20, 2009. Plaintiff filed her Charge with the EEOC on March 17, 2010, 301 days after the complained-of act. Although Plaintiff argues that the limitations period should not begin to run until such time that Defendant's discriminatory animus was apparent, the Fifth Circuit has addressed this question and held otherwise.[10] See Merrill, 806 F.2d at 605 (finding that the limitations period for Title VII claims begins to run when the plaintiff learns of the "discriminatory act"); Mackey, 2012 WL 1202045, at *3-4. Finally, Plaintiff has not demonstrated any basis for the application of equitable tolling, and this Court does not find that one exists. The Court is unaware of the

---

[10] The Fifth Circuit case Plaintiff relies on is distinguishable as it relates to seasonal employees. See Tucker v. United Parcel Serv., 657 F.2d 724 (5th Cir. Unit B Sep. 1981).

pendency of any suit between these parties in another forum, the record does not reveal that Defendant intentionally concealed the facts giving rise to Plaintiff's claim, Plaintiff has not alleged that the EEOC misled her in any way, and the Court is unaware of any timely but technically defective pleading in this case. See Granger, 636 F.3d at 708.

Next, the Court considers whether Plaintiff timely filed a Charge complaining of the alleged retaliatory act under the ADA: Mr. Bruno's complaint with the Louisiana State Board of Social Work Examiners. To begin, the Court must address whether the allegations of retaliation under the ADA included in the intake questionnaire but omitted from the actual Charge of Discrimination can constitute a "charge" in satisfaction of the administrative exhaustion requirement. When defining the scope of the exhaustion requirement, the Fifth Circuit considers the "two competing Title VII policies that it furthers." Cargo v. Kansas City Southern, No. 05-2010, 2009 WL 3010830, at *2 (W.D. La. Sep. 16, 2008)(quoting Pacheco v. Mineta, 448 F.3d 783, 788-89 (5th Cir. 2006)). These policies include (1) the need to liberally construe an EEOC complaint to maintain the accessibility of Title VII to pro se complainants and (2) Title VII's goal of triggering "the investigatory and

conciliatory procedures of the EEOC . . . to achieve non-judicial resolution of employment discrimination claims." Id. (quoting Pacheco, 448 F.3d at 788-89). "Accordingly, and keeping both considerations in mind, 'this court interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Id. Consequently, an EEOC intake questionnaire may constitute a "charge" when "it [can] be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Fed. Exp. Corp. v. Holowecki, 552 U.S. 389, 402 (2008).

Here, the Court concludes that the questionnaire Plaintiff submitted to the EEOC that included her claim of retaliation under the ADA resulting from Mr. Bruno's complaint constitutes a "charge" in satisfaction of the exhaustion requirement. Although the Court knows little of the questionnaire—in fact, Plaintiff included only one page—it is clear that it generated an EEOC investigation of Plaintiff's retaliation claim. This conclusion is evident from the EEOC determination letter addressing the merits of

Plaintiff's subject charge, which mentions Plaintiff's retaliation claim arising from Mr. Bruno's complaint.[11] (Rec. Doc. 27-1, p. 12) The Court is further persuaded that it may consider the questionnaire to be a "charge" here because doing so maintains the accessibility of Title VII without compromising the EEOC's goal of triggering investigatory and conciliatory procedures. Although those procedures did not result in a non-judicial resolution of Plaintiff's claims, it is clear that they were triggered.

Having established that the intake questionnaire constitutes a charge in satisfaction of the exhaustion requirement, the Court easily concludes that Plaintiff timely filed the charge. Mr. Bruno's Louisiana State Board of Social Work Examiners complaint is dated June 12, 2009. (Rec. Doc. 13-5) Plaintiff therefore had until April 8, 2010, to file a Charge based on this act, and her March 17, 2010, Charge was timely.

Finally, the Court addresses the timeliness of Plaintiff's March 8, 2012, Amended Charge and the claims that she asserted for the first time therein. (Rec. Doc. 13-7, pp. 1-2) Plaintiff's Amended Charge adds allegations

---

[11] The determination letter references the charge number of Plaintiff's March 17, 2010, charge. (Rec. Doc. 27-1, p. 12) Moreover, the determination letter is dated May 8, 2011. Id. at 13. It is therefore clear that the determination letter is not related to Plaintiff's March 8, 2012, amended charge, which expressly makes a claim of retaliation on the charge.

of discrimination based on Mr. Bruno's complaint as well as retaliation based on her termination. Clearly, Plaintiff submitted her Amended Charge after the 300-day window expired. However, EEOC regulations permit claimants to amend their original EEOC charges in order to cure defects or to "clarify and amplify" their original allegations. 29 C.F.R. § 1601.12 (2014). When such an amendment alleges additional acts which grow out of or relate to the subject matter of the original charge, the amendments will "relate back to the date the charge was first received," causing the amendment to be considered timely and administratively exhausted even if filed after the statute of limitations has run. 29 C.F.R. § 1601.12. Even if the Court found that Plaintiff's claim of retaliation under the ADA premised on her termination related back to her original Charge, however, such claim would be time-barred; Plaintiff submitted her original Charge more than 300 days after Defendant terminated her. See discussion supra. Consequently, the Court will only address whether her complaint of discrimination based on Mr. Bruno's complaint to the Louisiana State Board of Social Work Examiners relates back to the original Charge.

Here, the Court concludes that Plaintiff's claim of discrimination based on Mr. Bruno's complaint to the

Louisiana State Board of Social Work Examiners relates back to the original Charge. Plaintiff's previous retaliation claim deriving from Mr. Bruno's complaint is based on the same facts as her complaint-based discrimination claim. Compare Hornsby v. Conoco, Inc., 777 F.2d 243, 247 (5th Cir. 1985)(holding that an amendment did not relate back when it added an additional legal claim and new facts to support that claim), with Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970)(holding that an amendment related back when it added an additional legal claim but such claim was premised on the same facts as the original charge). The Court is aware that, "[g]enerally, amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination." Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 878 (5th Cir. 2003). On these facts, however, where both the original and amended claims are based on prohibited acts under the ADA as a result of Plaintiff's "chemo brain" and Mr. Bruno's complaint, the Court concludes that Defendant was sufficiently on notice. See id. at 878-79 ("One of the central purposes of the employment discrimination charge is to put employers on notice of the existence and nature of the charges against them. In order to adequately notify employers about the nature of the charges against them, employees must inform

their employers from the outset about their claims of discrimination." (internal quotation marks and citations omitted)).

**B. Merits of Plaintiff's Claims Deriving from Mr. Bruno's Complaint**

The Court will now address whether Defendant is entitled to judgment as a matter of law on Plaintiff's remaining claims: retaliation and discrimination based on Mr. Bruno's complaint to the Louisiana State Board of Social Work Examiners.

**1. Retaliation Under the ADA**

The Court addresses the merits of Plaintiff's ADA retaliation claim arising from Mr. Bruno's complaint. The ADA provision prohibiting retaliation states,

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). Thus, "[t]o demonstrate unlawful retaliation, a plaintiff must make a prima facie case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." Tabatchnik v. Continental Airlines, 262 Fed. Appx. 674, 676

(5th Cir. 2008)(citing Seaman v. CSPH, 179 F.3d 297, 301 (5th Cir. 1999)).

The Court agrees with Defendant that, by Plaintiff's own admission, she cannot make a prima facie case for retaliation under the ADA. Plaintiff argues that her March 17, 2009, Charge based on her termination should be considered timely because she was unaware until she received the June 24, 2009, letter that Defendant discriminated against her based on her disability. It is only then that Plaintiff sought to exercise her rights under the ADA. It is therefore unclear how Mr. Bruno's complaint, which he clearly made before Plaintiff received the letter notifying her of the complaint, could have been in retaliation for Plaintiff having exercised her rights under the Act. Plaintiff has not otherwise alleged that she acted in any way to "oppose any act or practice made unlawful by [the ADA]" or that she "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]" before Mr. Bruno's complaint. See 42 U.S.C. § 12203(a). Even if the Court assumes that Mr. Bruno back dated the complaint and sent it after he received Plaintiff's previous counsel's June 18, 2009, letter, Plaintiff's

26

retaliation claim is without merit.[12] Nothing in the letter indicates that Plaintiff had or would exercise her rights under the ADA. The letter indicates that Plaintiff did not know why she was fired and that she wanted an explanation and requests compensation that Plaintiff believed she was owed. (Rec. Doc. 13-6, pp. 1-2) The Court finds that Defendant is entitled to judgment as a matter of law as to Plaintiff's claim of retaliation under the ADA resulting from Mr. Bruno's complaint.

### 2. Discrimination Under the ADA

The Court turns to Plaintiff's allegations of discrimination arising from Mr. Bruno's complaint. The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a). Plaintiff's claim does not seem to fall within this proscription. Defendant was not Plaintiff's employer when Mr. Bruno filed his complaint. Nor was she a job applicant at that time. Although in certain circumstances a plaintiff may bring a cause of action under Title I of the ADA against a

---

[12] The Court engages in this exercise because Plaintiff suggests—without actually stating—that this could be the case. (Rec. Doc. 27-2, p. 9)

defendant who is not her employer, this case does not seem to present those circumstances. See, e.g., 42 U.S.C.A. § 12112(b)(1), (5), (6), (7) (prohibiting employers from discriminating against a job applicant based on disability).

Lastly, although Plaintiff invokes Federal Rule of Civil Procedure 56(d) and requests additional time for discovery, Plaintiff has not specified the discovery she wishes to conduct and the facts such discovery might produce. See Fed. R. Civ. P. 56(d); Castro v. Tex. Dep't of Criminal Justice, 541 F. App'x 374, 377 (5th Cir. 2013)(noting that a party moving for a continuance on a motion for summary judgment pending discovery "must demonstrate how the requested discovery pertains to the summary judgment motion and must have diligently pursued the relevant discovery"). It is unclear to the Court how any further discovery would reveal Plaintiff's claims to be timely or meritorious. The Court therefore declines to allow Plaintiff to conduct discovery before ruling on Defendant's motion.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion for Summary Judgment* **(Rec. Doc. 13)** is **GRANTED**.

New Orleans, Louisiana this 18th day of March, 2015.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE